UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANITA D. FRAZIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:05-cv-1610-DFH-WTL |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON JUDICIAL REVIEW

Plaintiff Anita D. Frazier seeks judicial review of a final decision by the
Commissioner of Social Security denying in part her application for supplemental
security income and disability insurance benefits.  Acting for the Commissioner,
an Administrative Law Judge ("ALJ") determined that Ms. Frazier was disabled
under the Social Security Act as of December 22, 2004, but that she had not been
disabled from August 11, 2000 to December 21, 2004 because she retained the
residual functional capacity to perform a limited range of sedentary work during
that time.  For the reasons explained below, the ALJ's decision is supported by
substantial evidence and is therefore affirmed.

*Procedural Background*

On August 11, 2000, Ms. Frazier applied for supplemental security income.
R. 229.  Her application was denied initially and upon reconsideration, and she

requested a hearing before an ALJ.  R. 154-74.  On December 28, 2001, the ALJ issued a written decision denying Ms. Frazier's application.  R. 10-17.  The Appeals Council denied her request to review the ALJ's decision, and Ms. Frazier appealed that decision to this court.

On September 18, 2003, Judge Tinder of this court reversed the Commissioner's final decision and remanded the case for a new hearing and decision.  See R. 251-57.  Judge Tinder concluded that the ALJ had failed to demonstrate that he had considered Listing 12.05C in assessing Ms. Frazier's condition.  Judge Tinder also stated that the ALJ had failed to address adequately the combined effects of Ms. Frazier's obesity, diabetes, and orthopedic impairments, and he ordered that additional medical evidence and opinions be taken to cure this deficiency and to assess any exertional limitations.  See R. 256.

While Ms. Frazier's request for judicial review of her August 2000 claim was pending, she filed a new application for supplemental security income and disability insurance benefits on August 6, 2002.  R. 312-14, 554-57.  That claim was denied initially and on reconsideration.  Ms. Frazier requested a hearing before an ALJ.  The hearing took place on August 17, 2004 and was consolidated with the hearing for reconsideration of Ms. Frazier's August 2000 application.  See R. 261-84.  The ALJ issued a partially favorable decision on January 28, 2005, finding that Ms. Frazier was disabled as of December 22, 2004, but that she was not disabled from August 11, 2000 to December 21, 2004.  See R. 225-37.

The Appeals Council denied further review of the ALJ's decision, R. 175-77, so the ALJ's decision is treated as the final decision of the Commissioner.  See *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994).  Ms. Frazier filed a timely petition for judicial review.  The court has jurisdiction under 42 U.S.C. § 405(g).

*Factual Background*

Ms. Frazier turned fifty years old on December 23, 2004, one day into the time period for which the ALJ determined that she had proven disability under the Act.  See R. 235.  She has a high school education and certification as a nurse's aide.  R. 168-69.  She had worked previously in food service and factory assembly.  R. 160-63.  Ms. Frazier claimed that she was unable to work because of back, knee, and shoulder pain, arthritis, dizziness, headaches, diarrhea, and complications caused by diabetes.  R. 158, 345.  She claimed that she became disabled in November 1995, shortly after a car accident.  R. 229, 312.  The medical evidence in the record dates back to 1991.

On September 30, 1991, Ms. Frazier had an X-ray that revealed tiny bone fragments in her left ankle accompanied by significant diffuse soft tissue swelling. There was no evidence of acute fracture or dislocation, however, and otherwise there were minimal degenerative changes.  R. 30A.

On January 31, 1994, Ms. Frazier was diagnosed with diabetes mellitus. R. 31.  On December 3, 1994, an X-ray of Ms. Frazier's right knee revealed minimal degenerative changes with small osteophytes but otherwise showed no acute fractures and no effusion.  R. 530.

In September 1995, Ms. Frazier was involved in a car accident.  R. 159, 352. X-rays of Ms. Frazier's lumbar spine, left lower leg, and left elbow taken on September 21, 1995 were unremarkable.  R. 493.

An echocardiographic consultation report dated September 25, 1995 indicated that Ms. Frazier had moderate pericardial effusion, right atrial dilatation (enlargement of right atrium of the heart), right ventricular dilatation, and pressure overload pattern of the right ventricle.  R. 492.

During a hospital visit on September 28, 1995, Ms. Frazier complained of left hand pain, low back pain, and left leg pain.  She reported suffering from panic attacks with heart palpitations after the September car accident.  She had slight pain with back extension and decreased strength of fingers and grip on the left hand.  She had swelling right beneath the kneecap on the left leg.  She was encouraged to use over the counter Tylenol for her pain and to stay active.  R. 34.

Treatment notes from June 18, 1996 indicated that Ms. Frazier's diabetes was well controlled and that her back pain was stable and decreasing.  R. 35.

On December 18, 1996, Ms. Frazier visited an orthopedic clinic and complained of left thumb pain, left knee pain, and left second toe pain. Her left thumb clicked with catching and pain. Her left knee had PF grind, lateral facet pain, and likely degenerative joint disease. She was given a thumb brace and was advised to use a cane and to wear wide/deep toe box shoes. R. 40. On that same day, Ms. Frazier's left hand was X-rayed. Except for a small amount of osteophyte formation at the thumb joint, the exam was unremarkable. R. 39. X-rays of Ms. Frazier's left knee on the same day showed only minimal degenerative change. R. 38. Further X-rays of the same knee on February 10, 1997, revealed only minimal degenerative joint disease affecting mainly the medial joint space of the knee, but otherwise were negative. R. 43. A treatment note dated March 3, 1997 noted that Ms. Frazier used a cane occasionally because of left knee pain. R. 44.

An eye exam on March 28, 2000 indicated that Ms. Frazier had trace nuclear sclerosis in both eyes but otherwise had normal vision and was able to "read fine" with reading glasses. R. 151. Treatment notes that day indicated that her diabetes was "controlled" and that she was "doing well." R. 148.

An emergency services clinical report (the date is not clear, but plaintiff indicates it was from August 8, 2000) indicates that Ms. Frazier had swelling of her left ankle, a burning sensation in the lateral malleolus, and sharp pain in the morning when she got up and put her foot on the floor. She reported that her swelling worsened as the day went on. R. 66. She was diagnosed with plantar

fasciitis and was told to put heel cups in her shoes and to take Tylenol on a regular basis.  R. 66-67.

A field office disability report dated August 11, 2000 indicated that Ms. Frazier had difficulty understanding and that questions had to be repeated and rephrased for comprehension.  See Docket No. 16.

On December 29, 2000, Ms. Frazier was examined by Dr. Mark Awar.  The exam noted Ms. Frazier's four years of complaints of left knee arthralgia and that her pain started in the morning, became worse throughout the day, was accompanied by occasional swelling, and that she took ibuprofen with partial relief.  Ms. Frazier had a mild left limp but had a normal gait and posture.  She could not stand up from the squatted position secondary to pain in her left knee. Although her knee pain was aggravated with use, it was relieved with rest and anti-inflammatory medication.  She did not exhibit effusion or inflammation in any joint, and her range of motion was normal in all joints.  Her grip strength and fine finger manipulative skills were normal.  R. 143-44.

On January 14, 2001, a residual functional capacity assessment indicated that Ms. Frazier could climb ramps and stairs occasionally but could never climb ladders, ropes and scaffolds.  R. 137.  The next day, on January 15, 2001, Ms. Frazier underwent a psychiatric evaluation and was found to have a WAIS-III full scale IQ of 71, indicating borderline intellectual functioning.  R. 131.

On February 27, 2001, X-rays of Ms. Frazier's hips indicated that her symptoms of hip and joint pain were consistent with osteoarthritis. The radiologist indicated that the osteoarthritis was mild. She could walk without difficulty and was told to take Motrin as needed. R. 71-72.

Clinic notes from December 11, 2001, show that Ms. Frazier complained of alternating periods of constipation and diarrhea. She reported worsening pain in her left knee which was typically more stiff and sore in the morning, although she obtained relief with Motrin taken as needed. Ms. Frazier reported some parathesias (numbness and tingling) in the soles of both her feet and was prescribed Elavil for "what sounds like diabetic neuropathy causing the pain in her foot." R. 433. On March 12, 2002 and June 18, 2002, she reported that the Elavil was helping her condition somewhat. R. 425, 413.

On March 12, 2002, Ms. Frazier again complained of ankle and foot pain. The examining physician stated that he was fairly certain that her pain was related to the osteoarthritis in her hips and wrists. He recommended Motrin and arch supports. R. 426.

Ms. Frazier visited the hospital again on February 4, 2003. She complained of shoulder pain (left greater than right) with her right shoulder being worse since a fall the previous summer. The pain was worse at night. Clinical impressions

included shoulder impingement, poor posture, and weakness.  She was diagnosed with shoulder osteoarthritis.  R. 568-69.

On February 20, 2003, April Faidley, PhD., performed a psychological evaluation of Ms. Frazier and found that she had a WAIS-III full scale IQ of 72, again indicating borderline intellectual functioning.  Her adaptive skills were assessed as adequate for independent living requirements.  R. 407.

On April 18, 2003, Dr. Doug Poplin conducted a Social Security disability examination of Ms. Frazier.  He noted normal posture, antalgic gait, an inability to walk on heels or toes, left ankle edema and bone hypertrophy, and tender left lateral knee and ankle.  Depression with anxiety was also noted.  Ms. Frazier was able to perform fine motor tasks and had a normal range of motion in all joints except her left knee and ankle.  R. 385-86.

On May 5 and May 6, 2003, Social Security Administration physicians reviewed Ms. Frazier's medical history and assessed her physical and mental functional capacities.  She was found to be capable of lifting 50 pounds occasionally and 25 pounds frequently, and capable of standing, walking and sitting for about six hours in an eight hour workday.  R. 358.  Review of her psychological records indicated that Ms. Frazier had a moderate ability to understand, remember, and carry out detailed instructions, but was otherwise not significantly limited.  Mild restriction of activities of daily living and difficulties

maintaining social functioning were also noted, as were moderate difficulties in maintaining concentration, persistence, or pace.  R. 365, 379.

On September 25, 2003, Ms. Frazier went to the emergency room because she had fallen the previous day, landing on her knees.  She was diagnosed with knee pain and prescribed ibuprofen and acetaminophen with codeine (Tylenol #3). R. 576-81.  Left knee X-rays taken during a followup visit on October 9, 2003 showed no acute radiographic abnormalities but revealed mild degenerative changes and mild narrowing of the patellofemoral posterior to the distal femur. R. 582-83.  Ms. Frazier complained of back pain during another follow-up visit on November 4, 2003, and added that ibuprofen was not helping her pain.  She rated her pain as 10 out of 10.  She was prescribed propoxyphene/acetaminophen 100/650.  R.  588-89.

The ALJ obtained the "additional medical evidence and opinions" ordered by Judge Tinder from Dr. Arthur Lorber, who performed a medical evaluation of Ms. Frazier on September 17, 2004.[1]  Dr. Lorber reviewed Ms. Frazier's medical history, performed a physical examination, and assessed her physical ability to do work related activities.   His physical examination revealed no cervical compression, a full range of motion in her shoulders, elbows, wrists, and fingers,

---

[1]This evaluation took place after Ms. Frazier's consolidated hearing on August 17, 2004.  The plaintiff, however, was given an opportunity to review and comment upon Dr. Lorber's report before the ALJ issued his decision.   The plaintiff submitted a thorough critique of Dr. Lorber's report on October 15, 2004. See R. 660-65.

and no weakness to manual muscle strength testing in the upper extremities.  R. 538.  He noted that Ms. Frazier's gait was unremarkable, but that she squatted poorly, complained of knee pain, and that both ankles were swollen.  X-rays revealed very early degenerative arthritis in both of her knees.  R. 539.

Dr. Lorber's assessment of Ms. Frazier's physical ability to do work related activities indicated that she could frequently lift up to ten pounds and occasionally lift or carry up to 20 pounds.  R. 541.  He found that she could sit for up to eight hours, stand for four hours, and walk for four hours in an eight hour day.  He further found that Ms. Frazier was limited to occasional use of her left hand for grasping and fine manipulation and was limited to occasional use of her feet.  R. 542.  She was limited to occasional postural activities but could  perform reaching, handling, feeling, and pushing or pulling frequently.  R. 543.

*Testimony at the Hearings*

During her first hearing, held on December 17, 2001, Ms. Frazier testified that problems with her back, knees, and arthritis interfered with her ability to work.  R. 158.  She also complained of diarrhea and an inability to control her kidneys, both of which she attributed to her diabetes, which required her to take frequent restroom breaks.  R. 158-69.  Much of this was repeated in Ms. Frazier's second, consolidated hearing held August 17, 2004.  She testified that pain and swelling in her legs, feet, hips, and knees prevented her from working.  R. 267.  She had a fall on the bus in 2003 in which she hurt her back.  R. 268.  She

sometimes had panic attacks that made her short of breath and sometime made her feel like her heart was beating faster.  Ms. Frazier further testified that she could walk one block, stand and sit for one hour, and that she would have difficulty lifting a gallon of milk.  R. 272-73.  She was, however, able to shop for groceries and to take her bags home on the bus.  R. 273.  Ms. Frazier testified that she occasionally went out socially and attended church weekly.  R. 275-76.  She was employed in February 2003 at Crossroads Industrial Service as a basic assembler and worked there six hours a day, three days a week, for about a year R. 273-75, 566.

The AJL examined vocational expert Stephanie Archer and asked her to consider a hypothetical individual who

> is capable of lifting and carrying 50 pounds occasionally, 25 pounds frequently. Can stand for six hours in an eight-hour day, stand and walk for six hours in an eight-hour day. And can sit for six or eight hours. And . . . the work should require no more than occasional bending or squatting or climbing of stairs and ramps. With no crawling or kneeling or climbing of ropes, ladders or scaffolds. The individual should avoid work at unprotected heights, around dangerous moving machinery . . . or being around open flames or large bodies of water. And the work should be simple and repetitive in nature. And should not require more than superficial interaction with the general public, coworkers or supervisors. And not require mathematics.

R. 280.  Given the limitations described to her by Judge Velasquez, the vocational expert testified that such an individual could perform assembly, cleaning , and packing work at the medium, light, and sedentary levels.  There were 20,500

positions at the medium level, 22,100 at the light level, and 5,200 at the sedentary level.  R. 280-81.

### The Statutory Framework for Determining Disability

To be eligible for either supplemental security income or disability insurance benefits, a claimant must establish that she suffers from a disability within the meaning of the Social Security Act.  To prove disability under the Act, the claimant must show that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that could be expected to result in death or that has lasted or could be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A).  Ms. Frazier was disabled only if her impairments were of such severity that she was unable to perform work that she had previously done and if, based on her age, education, and work experience, she also could not engage in any other kind of substantial work existing in the national economy, regardless of whether such work was actually available to her.  42 U.S.C. §§ 423(d), 1382c(a)(3)(B).

This standard is a stringent one.  The Act does not contemplate degrees of disability or allow for an award based on partial disability.  *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985).  Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful.

The implementing regulations for the Act provide the familiar five-step process to evaluate disability.  The steps are:

(1)     Has the claimant engaged in substantial gainful activity? If so, she was not disabled.

(2)     If not, did the claimant have an impairment or combination of impairments that are severe?  If not, she was not disabled.

(3)     If so, did the impairment(s) meet or equal a listed impairment in the appendix to the regulations?  If so, the claimant was disabled.

(4)     If not, could the claimant do her past relevant work? If so, she was not disabled.

(5)     If not, could the claimant perform other work given her residual functional capacity, age, education, and experience? If so, then she was not disabled.  If not, she was disabled.

See generally 20 C.F.R. § 404.1520.  When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Applying the five-step process, the ALJ found that Ms. Frazier satisfied step one.  Since her alleged onset date of disability, she had engaged only in part-time work that did not qualify as substantial gainful activity.  R. 230.  At step two, the ALJ found that Ms. Frazier had severe impairments consisting of degenerative joint disease, the residual effects of a right shoulder injury, degenerative disc disease, hypertension, hemorrhoids, gastroesophageal reflux disease, insulin-dependent diabetes mellitus, obesity, depression, borderline intellectual functioning and panic attacks.  *Id.*  At step three, the ALJ found that Ms. Frazier

-13-

failed to demonstrate that any of her severe impairments met or equaled a listed impairment.  R. 230-31.  At step four, the ALJ found that Ms. Frazier could not perform her past relevant work as a food service worker.  R. 234.  At step five, the ALJ found that Ms. Frazier retained the residual functional capacity before December 22, 2004 to perform a significant range of sedentary work.  He concluded, however, that she was disabled within the meaning of the Social Security Act as of December 22, 2004, the day before her fiftieth birthday.  R. 235.

## Standard of Review

"The standard of review in disability cases limits . . . the district court to determining whether the final decision of the [Commissioner] is both supported by substantial evidence and based on the proper legal criteria."  *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005), quoting *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  To determine whether substantial evidence exists, the court must "'conduct a critical review of the evidence,' considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision . . . ."  *Briscoe*, 425 F.3d at 351, quoting *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); see also *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).  The court must not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering

facts or the credibility of witnesses. *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994).   Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or based a decision on serious factual mistakes or omissions. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).   This determination by the court requires that the ALJ's decision adequately discuss the relevant issues:   "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."   *Briscoe*, 425 F.3d at 351, citing *Herron v. Shalala*, 19 F.3d 329, 333-34 (7th Cir. 1994). Although the ALJ need not provide a complete written evaluation of every piece of testimony and evidence, *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005), a remand may be required if the ALJ has failed to "build a logical bridge from the evidence to his conclusion." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

*Discussion*

Ms. Frazier argues that the ALJ erred by (1) concluding that her impairments did not meet or equal a listed impairment; (2) improperly assessing

her credibility; and (3) concluding that she could perform some sedentary work before December 22, 2004.

I.    *The ALJ's Step-Three Decision*

Ms. Frazier first argues that the ALJ erred at step three by finding that her condition did not meet or equal several listed impairments related to joint pain, cardiovascular problems, diabetes, and mental retardation.  She argues that the ALJ also failed to consider whether the combination of her impairments equaled a listing-level impairment.  More specifically, Ms. Frazier argues that the ALJ ignored or selectively considered evidence demonstrating that her impairments met or equaled the listings.

An ALJ may not select and discuss only the evidence that favors her ultimate conclusion.  She must at least minimally articulate reasons for rejecting or accepting specific evidence of disability so that a reviewing court can trace the path of her reasoning.  *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). Moreover, an ALJ may not ignore an entire line of evidence that is contrary to the ruling.  See *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (remanding because ALJ improperly ignored three lines of evidence).

At step three, the claimant has the burden of proving that her impairment meets *all* of the specified medical criteria in the listing.  *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002), citing *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990);

see also *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999).  Ms. Frazier has not met that burden.

A.      *Joint Dysfunction*

Ms. Frazier argues that her condition meets Listing 1.02.  To satisfy Listing 1.02, a claimant must demonstrate major joint dysfunction, characterized by gross anatomical deformity, chronic joint pain and stiffness with limited or other abnormal motion, and findings of joint space narrowing, bony destruction, or ankylosis of the affected joints; with (A) involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in the inability to ambulate effectively or (B) involvement of one major peripheral joint in each upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), resulting in the inability to perform fine and gross movements effectively.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.

The regulations provide that an inability to ambulate effectively is "an extreme limitation . . . that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities."  § 1.00B2c.  Ineffective ambulation typically requires that the individual have such poor functioning that she is required to use a hand-held assistive device that limits the functioning of both hands and arms.  *Id.*

The ALJ concluded that Ms. Frazier did not meet Listing 1.02 because he found no evidence that she was unable to ambulate effectively or to perform fine and gross movements effectively. See R. 230-31. Those findings are supported by substantial evidence. See R. 71 (can walk without difficulty), R. 144 (mild left limp but normal gait and posture), R. 385 (able to perform fine motor tasks), R. 538-39 (full range of motion in shoulders, elbows, wrists, and fingers), R. 542 (no restriction to use of right upper extremity in simple or fine manipulation).

B.   *Cardiovascular Impairments*

Ms. Frazier argues that her condition meets Listings 4.02, 4.03, and 4.07. The ALJ specifically addressed Listing 4.03 only, but concluded that Ms. Frazier had not met its requirements because he found no evidence of chronic heart failure, ischemic heart disease, end organ damage, or other heart disease as required by these listings. See R. 231. His findings are supported by substantial evidence. There is simply no evidence in the record that Ms. Frazier suffered from the sort of cardiac disease as serious as required by these listings. No physicians have diagnosed Ms. Frazier as having cardiovascular disease. To establish disability under Listing 4.03, a claimant must have an underlying condition of chronic heart failure or ischemic heart disease. Ms. Frazier presented no medical evidence that she suffered from either of these conditions.

C.     *Diabetes*

Ms. Frazier argues that her condition met Listing 9.08 for diabetes.  Listing 9.08 requires "neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.08A.  The listing can also be met by evidence of acidosis occurring at least once every two months, as documented by blood tests, or retinitis proliferans (visual impairment such that after correction vision is 20/200 or less, or peripheral vision is reduced significantly, or if after correction, visual efficiency is reduced to 20% or less).  20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 2.02; 2.03; 2.04; 9.08.

The ALJ concluded that Ms. Frazier did not meet Listing 9.08 because he found no evidence of the degree of neuropathy, acidosis, or retinitis proliferans required by this listing.  See R. 231.  Those findings are supported by substantial evidence.  There is no evidence in the record that shows disturbance of Ms. Frazier's gross and dexterous movements, or of her gait and station.  In fact, more than one medical report noted that her gait was normal or unremarkable.  R. 143-44, R. 539.  There is no evidence in the record of acidosis, and Ms. Frazier's visual acuity had been tested at 20/20 with correction (Tr. 151, 231).

D.   *Mental Retardation*

Ms. Frazier argues that her condition met Listing 12.05C for mental retardation.   The introductory paragraph of Listing 12.05 defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05.   More specifically, Listing 12.05C requires "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function"   20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05C.  To satisfy Listing 12.05C a claimant must satisfy the criteria of 12.05C as well as the definition of mental retardation in the introductory paragraph of 12.05.    See Listing 12.00, Mental Disorders ("Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).  If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.").[2]

The ALJ concluded that Ms. Frazier did not meet Listing 12.05C because although he found that she met the IQ requirement, he found no evidence of the

---

[2]Judge Tinder observed in his remand that "a claimant must not only satisfy the IQ score and the 'additional and significant work-related limitation' requirements [of 12.05C], she must also satisfy the diagnostic description in the introductory paragraph of the listing."  R. 254.

limitation of function required to satisfy the listing. See R. 231, 234. Those findings are supported by substantial evidence. As the ALJ noted, Ms. Frazier was able to live on her own, maintain her hygiene and grooming, wash dishes, do laundry by hand, pay bills, take the trash out, read, attend church, use public transportation, shop, and visit friends on occasion. R. 318-19, 337, 367, 383, 403-05. Further, there is no evidence in the record that Ms. Frazier was ever diagnosed with mental retardation; at most she was described having borderline intellectual functioning. R. 131, 407. See *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999) (ALJ reasonably found claimant did not meet 12.05C despite 68 IQ in part because the examiner diagnosed borderline intellectual functioning rather than mental retardation).

### E.    *Impairments in Combination*

Ms. Frazier further argues that the ALJ failed to consider her impairments in combination, as instructed by Judge Tinder's remand. Ms. Frazier analogizes her case to *Dullen v. Barnhart*, 1:03-cv-1042 (S.D. Ind. 2005), in which Judge Tinder concluded that the ALJ had failed to comply with the district court's instructions following two previous reversals and remands of the case. Judge Tinder reversed the Commissioner's decision for a third time and remanded with instructions that Dullen be awarded disability benefits. Judge Tinder found that the ALJ had improperly discredited the opinions of several treating sources and had failed entirely to mention the favorable testimony of one treating physician. Entry at 6, 13. He also found that the ALJ had misinterpreted a psychologist's

functional assessment of the claimant's anxiety as noting "moderate" limitations when in fact the examiner had opined that her condition was "severe."  *Id.* at 7-8. Finally, the ALJ had not specified which subjective complaints of the claimant he had considered, and he did not discuss all of the factors required in evaluating her credibility.  *Id.* at 9-10.

The sort of gaps and flaws described in *Dullen*, however, are not present in the written opinion of ALJ Velasquez, who complied with Judge Tinder's instructions on remand by obtaining additional medical evidence and assessing the combined effects of Ms. Frazier's impairments and her exertional limitations. The additional medical evidence was provided by Dr. Lorber, who reviewed Ms. Frazier's medical history, performed a physical examination, and assessed her physical ability to do work related activities.  R. 535-44.  Dr. Lorber found that, given his comprehensive evaluation of Ms. Frazier,  she could perform a restricted range of light work.  R. 541-44.  It was rational for the ALJ to rely upon the opinion of Dr. Lorber.  The ALJ's step-three finding is supported by substantial evidence.

II.    *The ALJ's Credibility Determination*

Ms. Frazier also argues that the ALJ erred in his evaluation of her credibility.  Because hearing officers have the opportunity to observe a witness and to evaluate her forthrightness, courts generally afford such officers' credibility determinations substantial deference.  *Powers v. Apfel*, 207 F.3d 431, 435 (7th

Cir. 2000).  An ALJ's credibility finding will not be disturbed unless it is "patently wrong."  *Id.*; *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995).  Where credibility determinations are based on "objective factors or fundamental implausibilities," however, the court has greater freedom to review the ALJ's decision.  *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

Ms. Frazier argues that the ALJ failed to comply with the requirements in Social Security Ruling 96-7p by failing to consider factors besides the objective medical evidence in assessing her credibility.  According to Social Security Ruling 96-7p, the ALJ must consider several factors when determining the credibility of a claimant's own testimony about the severity of pain.  See 20 C.F.R. § 404.1529. Social Security Rulings are treated in the Seventh Circuit as binding on the Social Security Administration.  *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999); *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991).  The factors include:  (1) the individual's daily activities; (2)the location, duration, frequency, and intensity of the individuals pain; (3) factors that aggravate the symptoms; (4) the effectiveness and type of medication the claimant takes; (5) treatment other than medication that the individual receives; (6) any other measures the individual uses or has used to relieve pain (*e.g.*, lying flat on her back); (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  See 20 C.F.R. §404.1529; SSR 96-7p.

The ALJ need not mechanically recite findings on each factor, but the ALJ must give specific reasons for the weight given to the individual's statements. SSR 96-7p. While the ALJ may not disregard a claimant's subjective complaints merely because they are not fully supported by the objective medical evidence, a lack of objective evidence is nonetheless important to the ALJ's credibility determination. See 20 C.F.R. § 404.1529(c)(2) (objective medical evidence is a "useful indicator" of the intensity of a claimant's symptoms and the extent to which a claimant's ability to work is impaired).

In this case, the ALJ's credibility finding is supported by substantial evidence. The ALJ thoroughly discussed the medical evidence in the record and considered Ms. Frazier's subjective complaints.

The ALJ noted that Ms. Frazier complained of left knee pain that was aggravated by walking, bending, or heavy use, but further noted that X-rays showed only minimal degenerative joint disease in the left knee and that physical examinations were within normal limits other than a mild left limp at times, some loss of motion at times, tenderness in the left knee at times, an inability to walk heel and toe at times, and an inability to squat at times. R. 232. The ALJ noted that Ms. Frazier took only ibuprofen or Motrin – mild pain relievers – for left knee pain. Ms. Frazier also complained of right knee pain, but the ALJ noted that X-rays showed only very early degenerative arthritis. R. 232.

The ALJ noted that Ms. Frazier complained of muscle soreness in the left hip but could walk without difficulty, and that X-rays revealed only mild osteoarthritis in both hips. *Id.* Ms. Frazier reported low back pain as well, but the ALJ noted that X-rays revealed only minimal degenerative spurring. *Id.*

The ALJ noted that Ms. Frazier's level of medication did not indicate severe or debilitating pain because she generally took only ibuprofen, Motrin, or Tylenol. R. 233. Further, he noted that the physical exams on record failed to indicate the inability to do light work. *Id.*

The ALJ noted that Ms. Frazier complained of panic attacks following her car accident in 1995. The ALJ further noted, however, that the panic attacks went away and were occurring only once in a while. R. 234. He also noted that medical examinations concluded that these panic attacks appeared very mild and within the normal range. *Id.* Despite this medical conclusion, the ALJ nevertheless gave substantial credit to Ms. Frazier's complaints and concluded that "considering the combined effects of any depression, borderline intellectual functioning and panic attacks, I have limited the claimant to work that is simple and repetitive in nature, does not involve mathematics, and involves no more than superficial interaction with the general public, coworkers, or supervisors." *Id.*

In the ALJ's first written opinion, he considered many of the same subjective complaints of Ms. Frazier but noted that she was able to dress herself, take care

of her personal hygiene, perform simple household tasks, buy groceries and count money, and went out socially.  The ALJ concluded that Ms. Frazier's subjective complaints were not entirely credible based on her ability to engage in these physical and mental activities.  R. 15.

Finally, the ALJ did credit Ms. Frazier's testimony to a large extent.  He noted that Dr. Lorber's conclusion that Ms. Frazier could perform a wide range of light exertional work was not consistent with the evidence of record regarding her degenerative joint disease, peripheral neuropathy, and obesity.  R. 234  The ALJ accordingly concluded that Ms. Frazier retained the residual functional capacity to perform only a limited range of sedentary exertional work.  The court finds no error in the ALJ's evaluation of Ms. Frazier's credibility.

III.    *The ALJ's Step-Five Decision*

Ms. Frazier further argues that the ALJ erred in his step-five determination that she retained the ability to do some sedentary jobs before December 22, 2004.  First, she argues that the ALJ erroneously relied on Medical Vocational ("Grid") Rule 201.12 to "direct" his determination that she could perform a significant number of sedentary jobs.  Ms. Frazier correctly points out that an ALJ may not rely on the Grid to direct a finding of non-disability when the claimant suffers from significant non-exertional limitations, such as pain.  See *Fast v. Barnhart*, 397 F.3d 468, 470-71 (7th Cir. 2005); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *Herron v. Shalala*, 19 F.3d 329, 336 (7th Cir. 1994).  However, the ALJ

did not err in this respect.  He cited Grid Rules 201.18 and 201.21, but then acknowledged that the Grid rules did not take into account all of the restrictions and limitations on Ms. Frazier's residual functional capacity.  R. 235.  He therefore deferred to the vocational expert's testimony.  Using the Grid rules as a "framework," he concluded that Ms. Frazier's capacity for sedentary work was not significantly compromised by the exertional and non-exertional limitations he had credited.  *Id.*

Ms. Frazier also argues that use of the Grid was inappropriate to find that she was *disabled* as of December 22, 2004.  She argues that use of the Grid is inappropriate either in finding the claimant disabled or not disabled when she suffers from exertional and non-exertional impairments.  This, however, is not what the regulations require.  Instead, the ALJ is first to look at the Grids and see if they direct a finding of disabled.  If so, the ALJ is done.  If not, then the ALJ should elicit the testimony of a vocational expert to determine "how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations."  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2).

In *Swenson v. Sullivan*, 876 F.2d 683 (9th Cir. 1989), the Ninth Circuit reversed a finding by an ALJ that a claimant with a combination of exertional and non-exertional disabilities was not disabled, even though he was deemed disabled under the Grids based on his exertional impairments alone.  As explained by the

Seventh Circuit: "In *Swenson,* the claimant's exertional limitations alone supported a finding of disability under the grids, but the ALJ nonetheless relied on the vocational expert's testimony to reach a result inconsistent with the grids." *Fast v. Barnhart*, 397 F.3d 468, 471  (7th Cir. 2005).  This was reversible error because an ALJ must find for the claimant when the Grid directs a finding of disabled and should not rely upon testimony of a vocational expert to the contrary.

Ms. Frazier also argues that the ALJ's use of the Grid rules was contrary to Social Security Ruling 83-20.  SSR 83-20 states that the factors relevant in determining a claimant's disability onset date include the individual's allegations, work history, and medical evidence.  SSR 83-20 also states that the ALJ must give a convincing rationale for the date selected and that the established onset date "can never be inconsistent with the medical evidence of record."  The ALJ found that Ms. Frazier was not disabled until December 22, 2004, when she turned fifty years old.  See R. 235.  Ms. Frazier argues that the ALJ erred by failing to explain this decision adequately.

The regulations state that if the ALJ concludes that the claimant cannot perform her past relevant work, he should consider her residual functional capacity, together with her age, education, and work experience, to decide if she can make the adjustment to other work.   See 20 C.F.R. § 404.1520(g)(1).  Specifically, if a claimant is closely approaching advanced age (meaning that he

or she falls within the age group 50 to 54), the ALJ will consider that the claimant's age, together with serious impairments and limited work experience, might seriously affect the claimant's ability to adjust to other work.  See 20 C.F.R. § 404.1563(d).

The ALJ found that when Ms. Frazier turned fifty, she met the criteria set forth in Grid Rule 201.12, which directed a determination of disability.  He concluded that there was no evidence in the record of any additional vocational adversity to support the use of a higher age category before that time.  See R. 235. When the ALJ considered Ms. Frazier's residual functional capacity before age fifty, the Grids directed a finding of not disabled and the ALJ then considered the testimony of the vocational expert to determine if Ms. Frazier's capability for work was further diminished because of her exertional and non-exertional limitations. He concluded that the limitations did not prevent her from engaging in limited sedentary work.  Hence, the ALJ adequately explained the date of onset, and his step five determination is supported by substantial evidence.

*Conclusion*

The Commissioner's decision is affirmed.  Final judgment will be entered accordingly.

So ordered.

Date: December 1, 2006

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Patrick H. Mulvany
mulvany@onet.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov